# EXHIBIT 1

**MARK MULICK, ESQ., P.A. (ID # 005701988)**
**1011 BLOOMFIELD AVE, SUITE 1B**
**WEST CALDWELL, NEW JERSEY 07006**
**(973) 746-7400 Fax (973) 746-9430**
**Attorney for Plaintiff**

| | |
|---|---|
| COURTNEY PORETSKIN | : SUPERIOR COURT OF NEW JERSEY |
| | : LAW DIVISION:MIDDLESEX COUNTY |
| Plaintiff | : DOCKET NO.:  MID-L- |
| | : |
| v. | : CIVIL ACTION |
| | : |
| | : |
| | : |
| CHANEL INC., CARL POULTER, | : **COMPLAINT AND JURY DEMAND** |
| LISA GASPERINI, AND JOHN DOES | : |
| ONE JOHN DOES ONE THROUGH TEN | : |
| | : |
| Defendants | : |

Plaintiff Courtney Poretskin, residing at 10 Pine Grove Place, Budd lake, New Jersey by way of complaint states:

## COUNT ONE

1.    Defendant Chanel Inc. is a corporation that does business in New Jersey with offices located at 876 Centennial Ave, Piscataway, New Jersey.

2.    Defendant Carl Poulter is a resident of New Jersey and was employed by defendant Chanel Inc. as plaintiff's supervisor with control of the work environment and the authority to hire and fire employees.

3.    Defendant Lisa Gasperini is a resident of New Jersey and was employed by defendant Chanel Inc. as a Human Resource Representative.

3.    John Does one through ten represent persons responsible for plaintiff's injuries whose identities are presently unknown.

4.    Plaintiff began her career with defendant Chanel in 2010 as a senior accountant and was later promoted to senior financial analyst. Afterwards she was promoted to manager of customer management and then director of fashion quality and aftersales. In that role she reported to Carl

1

Poulter, head of fashion, watches, and fine jewelry supply chains and aftersales. Mr. Poulter reported to Jose Monsanto, Senior Vice President of Operations.

5.      Throughout her career with Chanel, plaintiff received very favorable performance reviews and met all of Chanel's reasonable performance expectations. Seventeen Chanel employees reported to plaintiff directly or indirectly.

6.      In late 2019-early 2020, plaintiff commenced discussions with Poulter about reevaluating her job description and her role because the scope of her duties had increased significantly prior to the onset of the Covid-19 pandemic.

7.      With the onset of the Covid-19 pandemic, those discussions were tabled and all of plaintiff's efforts were directed to navigating the challenges of the crisis. In 2021, plaintiff received a very favorable performance review and she began to develop a strategy for recovery from the devastating effects of the pandemic.

8.      Whereas plaintiff had been performing in a more senior role for a protracted period of time, in early April 2022, she expressed to Gasperini that the regrading of her position needed immediate attention. Gasperini assured plaintiff that she would speak with Poulter and prioritize the upgrade of her position to Senior Group Director, a job title with an increased salary, bonus opportunities and other benefits. This issue was ultimately escalated to Monsanto.

9.      In late April 2022, Poulter advised plaintiff that while her job description had been upgraded and her position regraded, her promotion to senior group director was nevertheless being withheld because her team was "underperforming." Plaintiff let it be known that she was extremely displeased with this development because she had undertaken the duties of a senior group director for several years, guided her team through the pandemic and therefore was entitled to emoluments of that position.  Plaintiff further expressed her frustration with the lack

2

of support from Poulter and his decision to bypass her for the promotion she deserved. Plaintiff also expressed opposition as discriminatory of the prioritized promotion of Mathew Garetano, a male counterpart who lacked the necessary qualifications for the role he was promoted into. Plaintiff protested that male counterparts were receiving more favorable considerations for promotion opportunities. She expressed her opposition to the discrimination she experienced and the "boys club" environment she was exposed to the human resource department.

10.    Following these discussions, plaintiff began to notice a distinct deteriorating and retaliatory conduct by Poulter with whom she previously had a favorable working relationship with.  Poulter took no accountability for the challenges facing his organization, despite the departure of several employees who cited Poulter's treatment as the reason for the resignations and others voicing concerns about his leadership. Instead of taking responsibility for his adverse conduct, Poulter blamed plaintiff.

11.    In May 2022, Poulter advised plaintiff that a quality and aftersales taskforce was being formed to support the recovery efforts already underway under plaintiff's direction. Although plaintiff logically assumed she would have a lead role in the task force, Poulter assumed that role himself and plaintiff was not provided that runaway to exercise her leadership.

12.    Although plaintiff was deeply involved in Chanel's recovery from the Covid-19 pandemic, Poulter was dismissive of plaintiff's results and told her that additional improvements were needed.

13.    Whereas plaintiff's relationship with Poulter continued to deteriorate and become more retaliatory in nature, in or about early August 2022, plaintiff reached out to HR business partner Sana Mirza to express concern about the "boys club" that she was "discriminatorily" excluded

3

from. Plaintiff also informed Mirza that she was being scapegoated for the lack of performance by Poulter's organization.

14.     A formal investigation was allegedly then triggered by HR business partner Elizabeth Duque. Despite a formal interview wherein plaintiff expressed her concerns of discrimination and retaliation, no one let her know the outcome of the investigation.

15.     Later on, plaintiff spoke with HR representative Gasperini on two occasions. During the first discussion in September or October 2022, plaintiff reiterated her concerns that Poulter's conduct was both discriminatory and retaliatory. On December 2, 2022, plaintiff again reached out to Gasperini to discuss potential next steps because working for Poulter had become increasingly unbearable and the work environment had become "hostile."

16.     Despite the increasingly hostile/discriminatory/retaliatory work environment created by Poulter, plaintiff doubled down on her efforts to increase the performance of her department. Those efforts proved successful and by December of 2022, business had turned around and was performing at a pre-pandemic level. By way of example, at the end of 2021, service lead time had increased to a high of over 100 days. But under plaintiff's leadership, that was reduced by more than 55% by December 2022. Poulter never acknowledged this achievement and he unrealistically pushed plaintiff to obtain even better results.

17.     At no times since the implementation of the quality and aftersales taskforce to the date of her termination did Poulter advise plaintiff in any manner whatsoever that her job was in jeopardy. Plaintiff was never placed on a formal performance improvement plan outlining the specific areas where her performance was deemed insufficient, the actions she needed to take to measure up to the company's performance standards, and the time period in which she needed to improve her department's performance.

4

18.    Thus, plaintiff was completely blindsided when in January 2022 in a meeting among plaintiff, Poulter and Gasperini, plaintiff's employment with Chanel was terminated.

19.    The above termination of plaintiff's employment which for 14 years was outstanding was obviously discriminatory, as she was replaced by a less qualified male, retaliatory since it followed so close in time to her protected conduct in her complaints of discrimination and disparate treatment all in violation of New Jersey's Law Against Discrimination N.J.S.A. 10:5-1 et seq. Poulter and Gasperini are personally liable under the LAD as a retaliators and aiders and abettors N.J.S.A. 10:5-12 (d) and (e).

**WHEREFORE** plaintiff demands judgment against defendants for all damages compensable under New Jersey Law Against Discrimination N.J.S.A. 10:5-1 et seq., N.J.S.A. 10:5-12 (d) and (e), and under Common Law including, but not limited to, lost past, present and future wages, emotional distress, attorney's fees, etc.

A. Back pay and benefits:

B. Front pay and benefits;

C. Compensatory damages;

D. Consequential damages;

E. Punitive damages;

F. Pre-Judgment interest and enhancements to off-set negative tax consequences;

## COUNT II

20.    Plaintiff hereby incorporates the entire contents of paragraphs of 1-19 as if set forth in length herein.

5

21.     On or about February 9, 2018, plaintiff executed an agreement with Chanel that included an appendix titled "additional covenants." Paragraph "7" of that document "noncompetition" provides that in the event of a termination without cause, plaintiff would receive 12 months of severance payments and 12 months of continuing health benefits.

22.     During her termination meeting, Gasperini made it clear that Poretskin would not receive any severance benefits and to date, plaintiff has received none in violation of the contract.

23.     The conduct of Chanel, Gasperini and Poulter was an obvious breach of plaintiff's contract. It was also retaliatory and discriminatory in violation of the LAD N.J.S.A. 10:5-12 (d) and (e). As plaintiff's employer, Chanel is responsible for the contract breach and LAD violations of its employees. Gasperini and Poulter are personally responsible as retaliators and aider and abettor N.J.S.A. 10:5-12 (d) and (e).  All defendants are also liable to plaintiff under New Jersey Wage and Hour Law N.J.S.A. 34:11-56a4 et seq., N.J.S.A. 34:11-66 et seq., N.J.S.A. 34:11-56a et seq., N.J.S.A. 34:11-56a 25 et seq.,  N.J.S.A. 34: 11-56a 25.1. et seq.,  New Jersey's Wage Theft Act N.J.S.A. 34:11-4 et seq., and  New Jersey's Wage Payment Law 34:11-4.1 et seq.

WHEREFORE plaintiff demands judgment against all defendants for all damages compensable under New Jerseys Law Aginst Discrimination N.J.S.A. 10:5-1 et seq., New Jersey Wage and Hour Law N.J.S.A. 34:11-56a4 et seq., N.J.S.A. 34:11-66 et seq., N.J.S.A. 34:11-56a et seq., N.J.S.A. 34:11-56a 25 et seq.,  N.J.S.A. 34: 11-56a 25.1. et seq.,  New Jersey's Wage Theft Act N.J.S.A. 34:11-4 et seq.,   New Jersey's Wage Payment Law 34:11-4.1 et seq., and under Common Law including, but not limited to, enhanced lost past, present and future wages, emotional distress, attorney's fees, severance pay, and lost benefits, etc.

6

A. Back pay and benefits:

B. Front pay and benefits;

C. Compensatory damages;

D. Consequential damages;

E. Punitive damages;

F. Pre-Judgment interest and enhancements to off-set negative tax consequences;

G. Reinstatement of her employment

## DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates Mark Mulick, Esq. as trial counsel.

Dated: October 6, 2023

_____
Mark Mulick, Esq.
Attorney for Plaintiff, Courtney Poretskin

## R. 4:5-1 CERTIFICATION

1.    The matter in controversy in this case is not the subject of any other action pending in any court or of any pending arbitration proceeding.

2.    No other action or arbitration proceeding is contemplated by me.

3.    I do not know the names of any other parties who should be joined in this action.

4.    I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:  October 6, 2023

_____
Mark Mulick, Esq.
Attorney for Plaintiff, Courtney Poretskin

7

## <u>JURY DEMAND</u>

Plaintiff demands trial by jury on all issues between the parties.


Dated: October 6, 2023

_____
Mark Mulick, Esq.
Attorney for Plaintiff, Courtney Poretskin